UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL D. LOVINGS,<br><br>            Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | Case No. EDCV 13-1847 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I. SUMMARY

On October 16, 2013, plaintiff Carl D. Lovings ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; October 28, 2013 Case Management Order ¶ 5.

///

///

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On December 28, 2009, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 148). Plaintiff asserted that he became disabled on August 2, 1969, due to seizures, migraine headaches, inability to grip in both hands, and "CCCMS."[1] (AR 173). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on March 7, 2012. (AR 38-69).

On April 27, 2012, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 25-32). Specifically, the ALJ found: (1) plaintiff suffered from the following combination of impairments that was severe: seizure disorder, degenerative arthritis in the cervical spine, and a history of a left hand fracture with mild residual deformity at two metacarpal bones (AR 27); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 27); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 416.967(b)) with additional limitations[2] (AR 28); (4) plaintiff had no past relevant work (AR 30); (5) there are

---

[1]The California Department of Corrections and Rehabilitation assigns an inmate in its custody to the Correctional Clinical Case Management Services ("CCCMS") level of care when the inmate has mental health issues that do not need intensive treatment. See Ager v. Hedgepath, 2014 WL 1266120, *2 (N.D. Cal. Mar. 26, 2014).

[2]The ALJ determined that plaintiff (i) could do no more than occasional overhead reaching; (ii) could do no more than frequent handling, fingering, or pushing/pulling with the left upper extremity; (iii) could not climb ladders, ropes and scaffolding; and (iv) needed to avoid
(continued...)

jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically parking lot booth attendant, packing machine operator, and electronic worker (AR 30-31); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 29).

The Appeals Council denied plaintiff's application for review.  (AR 12).

### III.   APPLICABLE LEGAL STANDARDS

#### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

---

[2](...continued)
exposure to workplace hazards, operating automotive equipment, and exposure to extreme heat and extreme cold.  (AR 28-30).

|   |     |                                                                                       |
|---|-----|---------------------------------------------------------------------------------------|
|   | (3) | Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four. |
|   | (4) | Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five. |
|   | (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

      The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.**    **Standard of Review**

      Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff essentially asserts that the ALJ's step five determination is not supported by substantial evidence because the requirements of the representative jobs identified by the vocational expert exceed plaintiff's abilities.  (Plaintiff's Motion at 6-13).  As the Court finds that the ALJ erred at step five, and that the ALJ's error was not harmless, a remand is warranted.

### A. Pertinent Law

As noted above, at step five, the Commissioner must show that a claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett, 180 F.3d at 1100 (citation omitted); 42 U.S.C. § 423(d)(2)(A).  The Commissioner may satisfy this burden, depending upon the circumstances, with testimony from a vocational expert ("vocational expert" or "VE") or with reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-1101).

///

The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record.  See Tackett, 180 F.3d at 1101; see also Robbins, 466 F.3d at 886 (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted).  The DOT is the presumptive authority on job classifications.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job, however, without first inquiring whether the vocational expert's testimony conflicts with the DOT, and if so, the reasons therefor.  Massachi v. Astrue,  486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling ("SSR") 00-4p).[3]  In order for an ALJ to accept vocational expert testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435).  Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the

---

[3]Social Security rulings are binding on the Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).  Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.  Massachi, 486 F.3d at 1152 n.6.

claimant's residual functionality, or inferences drawn from the context of the expert's testimony. Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citations omitted).

### B. Analysis

Plaintiff asserts that the ALJ erred at step five in finding that plaintiff could perform the representative jobs of parking lot booth attendant, packing machine operator, and electronic worker (collectively "representative jobs") based on testimony from the vocational expert which, without explanation, deviated from the DOT. The Court agrees.

First, there appears to be a conflict between the requirements of the representative jobs and the ALJ's assessment of plaintiff's residual functional capacity. For example, in the hypothetical question to the vocational expert, the ALJ included a limitation to "no more than occasional overhead reaching." (AR 65). The vocational expert testified that, in spite of such limitation, plaintiff (or a hypothetical person with all of plaintiff's characteristics) could perform the representative jobs. (AR 65-66). According to the DOT, each of the representative jobs requires frequent "[r]eaching." See DOT §§ 726.687-010 [Electronics Worker], 915.473-010 [Parking-Lot Attendant], 920.685-082 [Packer Operator, Automatic]. Although the DOT does not specify whether the requisite "reaching" includes reaching *above shoulder level*, relevant legal authorities suggest that it does. See, e.g., Mkhitaryan v. Astrue, 2010 WL 1752162, *3 (C.D. Cal. 2010) ("the plain meaning of 'reaching' [for purposes of the DOT] encompasses above-the-shoulder reaching") (citing Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C (1993)); see also SSR 85-15 at *7 ("reaching" defined as "extending the hands and arms in *any* direction") (emphasis added).

Although some district courts disagree, many have found a possible conflict between a job which requires certain frequency of "reaching" generally, and a

claimant's preclusion or restriction on reaching specifically above shoulder level. See, e.g., Lang v. Commissioner of Social Security, 2014 WL 1383247, *7-*8 (E.D. Cal. Apr. 8, 2014) (finding potential conflict between VE testimony and DOT where VE testified that Plaintiff could perform three jobs that require "frequent reaching" – a requirement that "could potentially encompass frequent overhead reaching" which plaintiff could not do); Kirby v. Astrue, 2012 WL 5381681, *3 (C.D. Cal. Nov. 1, 2012) (finding "potential conflict" between VE testimony and DOT where plaintiff was limited to "no more than occasional reaching 'at or above shoulder level'" and representative jobs VE identified at hearing required "reaching 'frequently'" – noting "DOT may well contemplate a requirement of omnidirectional reaching.") (citations omitted); Newman v. Astrue, 2012 WL 1884892, *5 (C.D. Cal. May 23, 2012) ("possible conflict" between VE's testimony and DOT where VE opined that plaintiff could perform representative jobs that, according to the DOT, required constant or frequent reaching, but claimant's residual functional capacity precluded work above shoulder level bilaterally); Richardson v. Astrue, 2012 WL 1425130, at *4-*5 (C.D. Cal. April 25, 2012) (VE's testimony "inconsistent" with DOT where claimant "precluded [] from overhead reaching bilaterally" but VE opined that claimant could perform jobs requiring frequent or occasional "reaching"); Bentley v. Astrue, 2011 WL 2785023, at *3-*4 (C.D. Cal. July 14, 2011) (jobs which, according to the DOT, require "frequent reaching" inconsistent with plaintiff's inability to reach "above the shoulder level bilaterally"); Hernandez v. Astrue, 2011 WL 223595, *5 (C.D. Cal. Jan. 21, 2011) (finding "apparent conflict" between DOT and VE's testimony that hypothetical person (who was precluded from "work at or above shoulder level") could perform job that requires occasional reaching, since "DOT's definition of reaching contemplates reaching in all directions"); Mkhitaryan, 2010 WL 1752162 at *3 (finding apparent conflict between DOT and VE where "VE's testimony implie[d] that plaintiff was capable

of performing jobs that require frequent or constant omni-directional reaching, despite a shoulder limitation that preclude[d] above-the-shoulder reaching"); see also Kirby, 2012 WL 5381681 at *2-*3 (noting disagreement among district courts regarding whether there is "a conflict between the requirement of frequent reaching and a preclusion or restriction on reaching above the shoulder level") (citing cases).[4]

      Second, since the vocational expert did not acknowledge that there was a potential conflict between his testimony and the DOT, neither the vocational expert nor the ALJ attempted to explain or justify the apparent potential inconsistency in any manner. (AR 30-31, 63-67). Accordingly, the Court cannot conclude that the vocational expert's testimony, which the ALJ adopted, is substantial evidence supporting the ALJ's determination at step five that plaintiff could perform the representative jobs. Cf. Massachi, 486 F.3d at 1154 (remanding case where ALJ failed to ask vocational expert whether her testimony conflicted with the DOT and, therefore, court was unable to determine whether at step-five ALJ properly relied on vocational expert's testimony that claimant could perform other work); Prochaska v. Barnhart, 454 F.3d 731, 736 (7th Cir. 2006) ("It is not clear to us whether the DOT's [reaching] requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help").

///

---

[4]To the extent defendant suggests that plaintiff's inability to do more than occasional overhead reaching was not inconsistent with the requirements of the representative jobs essentially because plaintiff could still use his right hand (*i.e.*, "the ALJ only imposed restrictions on Plaintiff's capacity to reach overhead with his *left* upper extremity") (Defendant's Motion at 4) (emphasis added), defendant's suggestion is not supported by the record. Specifically, in the hypothetical question posed at the hearing the ALJ clearly differentiated between plaintiff's bilateral limitation to "no more than occasional overhead reaching" and plaintiff's restriction on "frequent pushing or pulling," the latter of which pertained only to "the left upper extremity." (AR 65).

Finally, the Court cannot find the ALJ's error to be harmless since defendant points to no persuasive evidence in the record which could support the ALJ's determination at step five that plaintiff was not disabled. Cf. Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ erred in finding that claimant could return to past relevant work based on vocational expert's testimony that deviated from DOT because ALJ "did not identify what aspect of the [vocational expert's] experience warranted deviation from the DOT, and did not point to any evidence in the record other than the [vocational expert's] sparse testimony" to support the deviation, but error was harmless in light of ALJ's alternative finding at step five, which was supported by substantial evidence, that claimant could still perform other work in the national and local economies that existed in significant numbers).

Although, as defendant suggests, the ALJ might properly have satisfied his burden at step five solely by applying the Grids (*i.e.*, specifically, Rule 202.10) (Defendant's Motion at 5-6), the ALJ did not do so in the administrative decision.[5]

---

[5] The Court declines the invitation to find harmless error based on defendant's lay assessment that "[a]pplication of the Grids would have been appropriate because Plaintiff's non-exertional restrictions did not significantly erode the occupational base for a full range of light work." (Defendant's Motion at 5-6). Here, the ALJ found that "[plaintiff's] ability to perform all or substantially all of the requirements of [light] work [was] impeded by additional limitations." (AR 31). Thus, at step five the ALJ declined to use the Grids and instead sought testimony from the vocational expert. See, e.g., Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) (Where a claimant has non-exertional impairments that "significantly limit the range of work permitted by the claimant's exertional limitations," the Grids do not apply and "the Secretary must take the testimony of a vocational expert . . . and identify specific jobs within the claimant's capabilities.") (citations omitted); Desrosiers v. Secretary of Health and Health Services, 846 F.2d 573, 577 (9th Cir. 1988) ("A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable."); SSR 85-15 ("Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the

(continued...)

1  This Court may not affirm the ALJ's non-disability determination based on
2  reasons not articulated by the ALJ.  See Molina, 674 F.3d at 1121 (citing
3  Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196
4  (1947)) ("[courts] may not uphold an [ALJ's] decision on a ground not actually
5  relied on by the agency"); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We
6  review only the reasons provided by the ALJ in the disability determination and
7  may not affirm the ALJ on a ground upon which he did not rely."); see also
8  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to
9  review the reasons the ALJ asserts.").

## V.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  May 23, 2014

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[5](...continued) assistance of a [vocational expert] may be needed to determine the effects of the limitations.").  It was soundly within the ALJ's province to do so.  Cf. Sam v. Astrue, 2010 WL 4967718, *11 (E.D. Cal. Dec. 1, 2010) ("The determination of whether a nonexertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ.")  (citing Desrosiers, 846 F.2d at 577).

[6]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).